JOHN MCCULLOUGH, Respondent, v. THE WABASH WESTERN RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 4, 1889.

1. **Common Carrier :** DELIVERY TO : LIABILITY OF : FOR DEFECTIVE STOCK CHUTE GANGWAY : CASE ADJUDGED. Plaintiff and defendant's agent made a verbal agreement for the shipment of plaintiff's horse on the next day, and according to agreement, plaintiff brought his horse to the designated place at the agreed time and the agent there showed him the car drawn up to the stock chute and by the agent's consent, plaintiff proceeded with his own help to load the horse, and, by reason of its rottenness, the gangway gave way, injuring the horse to the amount of a thousand dollars, and the court *holds* there was such a delivery as to render the defendant liable and that it is required to furnish a safe chute for loading as well as safe cars for transportation.

2. ———— : ———— : ———— : SUBSEQUENT CONTRACT OF SHIPMENT WITH EXEMPTIONS : EFFECT OF : EVIDENCE. The fact, that by a subsequent arrangement, the horse was put upon the car from the depot platform, and thereafter a contract of shipment was signed exempting defendant from liability for any loss, damage or injury to the horse while being loaded, forwarded or unloaded, and casting the same upon plaintiff, and stipulating that in no event was defendant's liability to exceed one hundred dollars, but, containing no release of defendant from past liability, does not relieve defendant's liability and defeat plaintiff's recovery, and such contract was inadmissible as evidence.

3. **Appellate Practice :** ERRORS NOT CALLED TO ATTENTION OF TRIAL COURT, OR, INVITED BY APPELLANT. The complaint of the inconsistency of the instructions, not mentioned in the motion for a new trial, nor in the assignment of errors here, and which seems to have been invited by appellant, cannot be considered here, especially as it is evident. that the case was properly determined under the law and the facts.

*Appeal from the Jackson Circuit Court.*—Hon. J. H. Slover, Judge.

Affirmed.

*John W. Henry, Geo. S. Grover*, for appellant.

( 1 ) There was no delivery to the carrier at the time the injury sued for occurred. Hutchinson on Carriers, sec. 82, p. 64. ( 2 ) If the delivery was complete, then the contract in evidence related back thereto, and destroyed the cause of action. *O'Brien v. Kinney*, 74 Mo. 125 ; *Railroad v. Cleary*, 77 Mo. 634 ; *Atkinson v. Railway*, 80 Mo. 213 ; *Myers v. Railway*, 90 Mo. 98. ( 3 ) The failure on the part of respondent to give the notice required by the contract in evidence, destroyed his right of action. *Dowson v. Railway*, 76 Mo. 514 ; *Railroad v. Cleary*, 77 Mo. 634 ; *Brown v. Railway*, 18 Mo. App. 568. ( 4 ) Even if the respondent is entitled to recover in this action under the contract in evidence, such recovery is limited to the sum of one hundred dollars. *Harvey v. Railroad*, 74 Mo. 538 ; *Brown v. Railroad*, 18 Mo. App. 568 ; *McFadden v. Railway*, 92 Mo. 343 ; *Grogan v. Express Co.*, 30 Am. & Eng. R. R. Cases, 9 ; *Hart v. Railroad*, 112 U. S. 331. ( 5 ) The instructions given at the request of plaintiff were erroneous. Authorities cited, *supra*. ( 6 ) The instructions asked by the defendant, and refused by the court, correctly declared the law. Authorities cited, *supra*. ( 7 ) The instructions given by the court at the request of the plaintiff, and those given at the request of defendant, are based upon conflicting theories, and are therefore wholly irreconcilable. *Goetz v. Railroad*, 50 Mo. 472 ; *Henschen v. O'Bannon*, 56 Mo. 289 ; *Stevenson v. Hancock*, 72 Mo. 612 ; *State v. Nauert*,

2 Mo. App. 295; *Lampert v. Gas Co.*, 12 Mo. App. 576; *Price v. Railroad*, 77 Mo. 508; *Welch v. Railroad*, 20 Mo. App. 477; *Frederick v. Allgaier*, 88 Mo. 598.

*John W. Beebe*, for respondent.

( 1 ) The *gravamen* of the petition is a charge of negligence against the appellant in furnishing the respondent a defective chute and gangway connected with its stock-pens for use in loading his horses. Hutch. on Carriers, sec. 293 *et seq.; Potts v. Railway*, 17 Mo. App. 395; *Mason v. Railway*, 25 Mo. App. 473; *Potter v. Sharp*, 24 Hun ( N. Y. ) 179. ( 2 ) There was such a reception of respondent's horses for transportation as to render the appellant liable for negligence in furnishing unsafe and defective appliances for loading the same. Hutchinson on Carriers, secs. 90, 101; *Mason v. Railway*, 25 Mo. App. 473; *Wycoff v. Ferry Co.*, 52 N. Y. 32; *White v. Winnersemret Co.*, 7 Cush. 155; *Railway v. Kolb*, 73 Ala. 396; *Potter v. Sharp*, 24 Hun, 179; *Prewitt v. Railway*, 62 Mo. 527; *Merriam v. Railway*, 20 Conn. 354; *Railway v. Snyder*, 38 Ill. 354. ( 3 ) The contract in evidence was wholly ineffectual to destroy or affect the respondent's cause of action or limit his amount of recovery. *Goggin v. Railway*, 62 Ga. 685; *Dixon v. Railway*, 4 Biss. 137. ( 4 ) Appellant furnished the defective appliances and received the horse under a parol contract, under which its liability was fixed before the execution of the contract. *Harrison v. Railway*, 74 Mo. 364; *Railway v. Perkins*, 17 Mich. 296; *Bostwick v. Railway*, 45 N. Y. 712; *Goth v. Dinsmore*, 111 Mass. 45; *Wheeler v. Railway*, 115 U. S. 329; *The Edwin*, 1 Sprague, 477; *Hamilton v. Railroad*, 30 Am. & Eng. Ry. Cases, 1; *Swift v. Pac. Mail*, Am. & Eng. Ry. Cases, 105. ( 5 ) The instructions given in behalf of respondent correctly declared the law. If the first paragraph of instructions

numbered 5 and 7, given in behalf of appellant, can be construed to be in conflict with them, appellant cannot be heard to complain of an error into which its counsel led the court. *Blackwell v. Bailey*, 1 Mo. App. 328 ; *Alexander v. Clark*, 83 Mo. 482 ; *Moore v. Mountcastle*, 72 Mo. 605 ; *Loomis v. Railway*, 17 Mo. App. 340 ; *State v. Harlow*, 21 Mo. 446 ; *Kroneberger v. Haffner*, 44 Mo. 185. ( 6 ) Nor was the supposed inconsistency noticed in the motion for a new trial.

GILL, J.—On May 23, 1888, respondent McCullough, owning a valuable race horse at Moberly, Missouri, and desiring to ship him with another to Kansas City, applied to appellant's agent at Moberly for terms, and on said May 23, McCullough and this agent agreed that the race horse—"Thrift" by name—should be brought in the next day—that the agent would have a car ready at the stock-pens and chute where the horse could be loaded and shipped at a stipulated price to Kansas City.

The next day, twenty-fourth of May, McCullough, according to agreement, brought the horse to the appointed place for shipment, the agent designated the car at the "chute" as the one to be used in carrying the horses and respondent McCullough by the consent of the agent proceeded entirely with his own force to load the horse by means of passing into and through the stock pen and thence by the chute, into the car, all prepared by the railroad company for the purpose. As the horse "Thrift" was being led through the "chute" and just as his fore parts had entered the car the gangway or platform gave way under the the hind parts of the horse and he fell and was badly injured. The evidence showed that this platform or gangway was constructed of defective or rotten lumber which broke under the weight of the animal and thereby the damage was done. After the horse was extricated it seems

McCullough v. The Wabash Western Ry. Co.

McCullough thought of abandoning the shipment, at all events he was leading the two horses, "Thrift" and another, back to Moberly when the agent approached and asked if he was not going to ship the stock. After some talk it was concluded to put the horses a board the car. The car was brought to the platform of the station, another gangway was constructed and the horse "Thrift" with the other, was put aboard the car and hauled to Kansas City. There seems no question made but that the animal was injured about to the extent claimed one thousand dollars and this was the judgment of the circuit court, as the court sitting as a jury awarded the plaintiff a recovery in the sum of one thousand dollars from which judgment the defendant has appealed.

It may be as well to say, too, that the evidence was contradictory as to whether or not the plaintiff McCullough knew of the defective condition of the chute or gangway.

There was no written contract of shipment between the parties until the horse was put upon the car by means of the last effort at the depot platform. Then a contract was made and signed by and between the "Wabash, St. Louis & Pacific Railway Company, party of the first part, and John McCullough, of the second part," whereby, in effect it was stipulated that in consideration of a reduced rate of freight the railroad company should be exempt from certain duties ordinarily imposed upon carriers, etc. The first and second clauses of exemption are as follows:

"1. The party of the second part agrees to take care of said freight while the same is being transported and loaded, and unload the same at his or their own risk and expense.

"2. The party of the second part expressly agrees that neither the party of the first part, nor any connecting line or lines over which said freight will pass, shall

be responsible for any loss, damage or injury which may happen to said freight or be sustained by it while being loaded, forwarded or unloaded." And it was agreed, too, in this contract, that the company should not be liable in any event beyond one hundred dollars for each animal.

I.   The points mainly relied upon by the appellant's counsel for reversal are these two :   (1)   That there was not such a delivery to the carrier at the time of the injury as would warrant a recovery in an action against the railroad company, and (2) that even if the delivery was complete then the written contract in evidence related back and exempted the company from any liability for damages to the horse while being loaded.

We think the appellant is in error as to both these propositions.   " It is a matter of common knowledge that railway carriers provide stock-pens as a means of receiving at their stations live stock for shipment and that it is a part of their mode of transportation."   Quoted from opinion of the court in *Mason v. Railroad*, 25 Mo. App. 480.   "I think," says the opinion in the same case, " that the rule as to the safety of a car is applicable to the stock-pens, each of course governed by the uses for which they are intended."

This language was used in a case very similar in its substantive facts to the one at bar.   In that controversy the matter complained of was an insufficient, decayed fencing about the pens and that the cattle broke down the pens, scattered over the country, to the plaintiff's damage and he was allowed to recover, the court holding as above, that the railway company was bound to provide reasonably safe stock-pens as it was bound to provide safe cars for its transportation.   So we say here that this defendant was bound to provide a reasonably safe chute leading from the pen into the car, and a delivery of the plaintiff's horse at this pen and on the chute provided by the railway company and by its agent

designated as the appliance to be used in loading the car, was a sufficient delivery upon which the company would be charged if it proved rotten and defective and damage resulted therefrom.

That McCullough, with his own help, went into the stock-pen and led the horse into the car, or on the chute, and was not assisted therein by the agent or employes of the railway company, will not relieve the company under the circumstances.  The pen and chute were placed there for use in loading stock, and the car was placed at the chute by the company's agent to receive the horse, and McCullough was invited to use the chute in loading the horse, and in the use of the chute, as in the use of the car, he had a right to rely that each was suited to the purposes for which it was intended.  It was not such a delivery, perhaps, as imposed the rigorous liability of an *insurer*, but it was such as would impose liability for defects in the car, chute, or other appliances provided by the company for transportion of the plaintiff's stock.  Hutchinson on Carriers, sec. 101, and authorities cited in note.

II.  Defendant's counsel further contend that even if there was a delivery so as ordinarily to impose a liability on the company for the defective chute used in loading the horse, yet that the railway company is relieved of responsibility by the terms of the written contract, or bill of lading, subsequently executed.

The theory, doubtless, upon which the able counsel place this contention is the merger of all prior verbal negotiations in the writing subsequently entered into between the parties, and so this is the general rule, and if the damage here complained of had resulted subsequently to any written contract between them, then the rights of the parties would be controlled by such writing.  But if the breach of the prior verbal contract had already occurred and an action accrued to the plaintiff, then the making of the written contract in evidence·

subsequent to the injury committed, did not deprive the plaintiff of his rights already accrued under the former parol contract. *Harrison v. Railroad*, 74 Mo. 373. The case at bar invokes the rule even more forcibly than the case in 74 Mo. Here McCullough had made a verbal contract for the transportation of this stock. Terms had been agreed upon, and he had been directed how, where, and by what means to place the animal in the car. He followed such directions, the horse was injured by reason of the defective appliances furnished by the railway company, and he then, as the evidence shows, was about to abandon the shipment and return home with the stock when new negotiations were had and the stock loaded in the car from another place, and then it was that the written contract, read in evidence, was signed. It makes no mention of a release of the damages already sustained, nor is there anything in the writing which can be construed as an intention to release such damages. See also *Perkins v. Railroad*, 17 Mich. 296, cited with approval by Judge NORTON, 74 Mo. 373.

We conclude, then, that the written contract introduced at the trial was irrelevant to the issues of this case, and ought to have been excluded, and holding this view we shall not consider it further.

III. The further error relied on by defendant's counsel, to the effect that the court gave inconsistent instructions, we shall not consider further than to say that no such error was called to the attention of the trial court in the motion for a new trial; nor does the assignment of errors in this court make such complaint. At any rate, the errors in declaring the law of this case, and the inconsistency of the court's instructions arise because of those improperly given at the instance of the defendant. It can't be heard now to complain of that inconsistency for which it is responsible. *Alexander v. Clark*, 83 Mo. 482.

It is evident from the instructions given by request of plaintiff, and the finding and judgment by the court, that the case was properly determined under the law and the facts, and it should, therefore, be affirmed, and it is so ordered. All concur.