## C. B. WILSON, Appellant, v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, Respondent.

### Kansas City Court of Appeals, March 2, 1908.

NEGLIGENCE: Pleading: Petition: Approximate Cause. Plaintiff's petition set up that defendant negligently permitted Texas cattle to escape upon the highways, one of which led by his pasture land and that the State veterinarian quarantined this highway, and as a consequence his patrons withdrew their patronage and he lost his benefits and profits. *Held*, the petition does not state a cause of action, since the injuries were not such natural and probable consequences of the negligent acts as might have been foreseen by a man of ordinary prudence; and there is not an unbroken chain of causal connection between the negligence and the injuries.

Appeal, from Henry Circuit Court.—*Hon. Charles A. Denton*, Judge.

AFFIRMED.

*C. I. Davis* for appellant.

(1) The petition states facts sufficient to constitute a cause of action. It parallels the petition in the case of Grimes v. Eddy, 126 Mo. 168, so far as the acts of the defendant are concerned, the only difference being the resultant damages and the proximity of the cause. There was the wreck. There was the negligence of the defendant in turning the cattle out and permitting them to escape and then rounding them up and driving them over the public streets to the stock yards. There were the Texas cattle infected with microbes or parasites which were liable to communicate to native cattle travelling over the ground after them or eating grass over which they had passed or their droppings had fallen. (2) Any one who allows diseased or infected animals to run at large, knowing them to be diseased or infected, is liable for the damage or loss which such animals may cause by reason of such disease or infection. And courts will take judicial notice that all Texas

cattle during the spring and summer months are infected in their systems with a parasite or germ, which taken into the stomach by native cattle produces Texas fever, and the defendant is therefore charged with notice of their condition.   Grimes v. Eddy, supra; Kincaid v. Railway, 62 Mo. App. 365; Miller v. Railway, 90 Mo. 389; Morrison v. Railway, 27 Mo. 418; Magrane v. Railway, 183 Mo. 129; Parker v. Transit Co., 108 Mo. App. 468; Cooley on Torts (2 Ed.), p. 81, side p. 74, note 1; Adams v. Railway, 100 Mo. 555; Railway v. Raney, 99 S. W. 589; Brown v. Railway, 20 Mo. App. 222.

*Geo. P. B. Jackson* for respondent.

(1)   The demurrer was properly sustained.   The various grounds of the demurrer may be considered together.   Upon the face of the petition it appears that the acts and conduct of the defendant's agents mentioned in the petition, to-wit, the permitting the Texas cattle being transported through Henry county to escape from the control of the defendant and pass over streets and highways in said county, was not the proximate cause of the plaintiff being deprived of the pasturage of a piece of land upon which he was engaged in pasturing cattle for citizens of Clinton.   Ray on Negligence of Imposed Duties, pp. 133, 134; Wharton on Negligence, sec. 134; Sira v. Railroad, 115 Mo. 127; Brewing Assn. v. Talbot, 141 Mo. 683; Graney v. Railroad, 157 Mo. 683; Fuchs v. St. Louis, 167 Mo. 646; Chandler v. Gas Co., 174 Mo. 328; Atkinson v. Railroad, 90 Mo. App. 496; Logan v. Railroad, 96 Mo. App. 465; Saxton v. Railroad, 98 Mo. App. 501.

BROADDUS, P. J.—This is an appeal by the plaintiff from the action of the court sustaining a demurrer to his amended petition and a judgment following for defendant.   The petition is as follows:

"Plaintiff, for his amended petition says that the

Missouri, Kansas & Texas Railway Company was on and after the day hereinafter mentioned, and now is, a railroad corporation organized under laws of the State of Kansas, owning, operating and running a railroad through the county of Henry and State of Missouri, and doing a general railroad business over and on said railroad.

"Plaintiff states that on or about the ——— day of June, 1905, the defendant railway was engaged in transporting upon said railway and had upon its cars while so transporting through Henry county, Missouri, a large number of Texas cattle, said cattle being at said time infected with a deadly disease known as Texas fever; that all Texas cattle during the spring and summer months, whether perceptibly affected by said disease or not, communicate the same to all cattle raised in Missouri, passing over land previously passed over by such Texas cattle; that defendant at said time well knew that said cattle were Texas cattle; that they were infected with said disease, and of the liability aforesaid to communicate said disease to Missouri-raised cattle by leaving the germs of said disease upon the ground over which they traveled; and that defendant so knowing and while said Texas cattle were by it being transported across Henry county, Missouri, wrongfully and negligently, by its agents, servants and employees permitted said Texas cattle, so infected with said disease and so liable to communicate said disease, as aforesaid, whether apparently affected themselves or not, to escape from the control and custody of said defendant and run at large over a large area of land in Henry county, Missouri, including public highways and fields and pastures between the city of Clinton and Grandriver, and over and through the streets within the corporate limits of the said city of Clinton, in said county and State, including Artesian avenue, from Hormeyer street to Rogers avenue, and all public roads

and streets and parts thereof leading from Rogers avenue to the Missouri, Kansas & Texas Railway stock yards in said city of Clinton, for several days.

"Plaintiff states that, by reason of said Texas cattle running at large as aforesaid over the land and public highways aforesaid, through the negligence of defendant aforesaid, the State Veterinary Surgeon, by virtue of the authority vested in him under the laws of the State of Missouri and the rules and regulations of the State Board of Agriculture promulgated for the governing of the Veterinary Department, issued a notice to the county court of Henry county, Missouri, as follows:

" 'State Board of Agriculture, Veterinary Department, Columbia, Mo.

" 'To the county court of Henry county, State of Missouri:

" 'Your Honorable court is hereby notified that the following public roads, streets and parts thereof, commencing at a point in section 15, township 41, range 26, in Clinton township, Henry county, Missouri, where the M., K. & T. railroad crosses the public road in said section 15, running thence north to Rogers avenue, thence east to the northwest corner of the northeast quarter of the southeast quarter of section 10, township 41, range 26, thence south to the northwest corner of the northeast quarter of the northeast quarter of section 15, thence west to the public road, running north from where the said M., K. & T. crosses said public road, including herein all public roads, streets and parts thereof leading from where said railroad crosses said public road and running north to Rogers avenue and to Artesian avenue, including Hormeyer street and Towers street, and all of the part of Artesian avenue running northeast from Hormeyer street to Rogers avenue, and all public roads and streets and parts thereof leading from Rogers avenue to M.,

K. & T. Stock Yards in the city of Clinton, Missouri, are infected with the germs of Texas fever which produces a fatal disease to native Missouri cattle.

" 'Now, therefore, by authority vested in me, I do this day recommend that said above-described public roads, streets and parts thereof be placed under strict quarantine and do hereby recommend that you notify the public and command all owners and custodians and all other persons under the penalty prescribed by law to keep all native Missouri cattle out of said public roads and streets, all parts thereof, and prohibit the driving of cattle along the same until said quarantine is raised upon the order of the county court or other lawful authority.

" 'Done at Clinton, Henry county, Missouri, this 20th day of June, 1905.
" 'T. E. WHITE, D. V. S., Deputy Veter.'

"That said notice was received and filed by the county clerk of said county, June 20, 1905; and that on the 21st day of June, 1905, the sheriff of Henry county, Missouri, by order of the county court of said county, posted notices quarantining the above-described tracts of land, public highways, streets and alleys, as set forth by the notice of the said veterinary surgeon against all native Missouri cattle, until such time as by order of the said county court the quarantine should be raised; that said quarantine by order of said county court at the request of the State Veterinary Surgeon was raised on the first day of November, 1905.

"Plaintiff further states that at all the times herein mentioned he was the lessee and in possession and control of a large body of pasture lands, just west of the southwest corner of the corporate limits of the said city of Clinton, lying along by the side of the Clinton and LaDue public road which is the continuation of Artesian avenue and the only outlet from the city of Clinton

to said tract of pasture land and the said pasture could not be reached from the city of Clinton in any other way without passing over private property; that the plaintiff was engaged at the times herein mentioned, when said Texas cattle were permitted by said defendant to roam around over streets and public highways as aforesaid, and for many years prior thereto, in pasturing a large herd of native Missouri milch cows, which he drove to and from said pasture daily during the pasturing seasons, and other Missouri-raised cattle which he drove in and out as the occasion might require; that said pasture was of great profit to the plaintiff by reason of its close proximity to the city of Clinton, and being the principal pasture for the town cows; that plaintiff had made a business of pasturing town cows for a great many years and had thereby built up a profitable and paying business.

"Plaintiff states that by reason of the wrongful and negligent act of the defendant in permitting said Texas cattle, so infected with Texas fever as aforesaid, to run at large and cross over, upon and through the said public highways, streets, avenues and other lands aforesaid, this plaintiff was compelled to quit driving all native Missouri cattle to and from his said pasture, thereby losing the pasturing of the same and the profits arising therefrom; and that he was compelled to pay a large sum for rents on said pasture land without reaping any benefits therefrom; that by reason of the premises aforesaid plaintiff ceased pasturing said cattle on the 21st day of June, 1905, and was unable to utilize said pasture for said purpose at any time thereafter during the pasture season of the year 1905; and that by reason of the said wrongful and negligent act of the defendant as aforesaid, plaintiff says he has been damaged in the sum of eight hundred dollars.

"Wherefore plaintiff asks judgment in the sum of Eight Hundred Dollars damages and for costs."

The grounds for the demurrer were:

"1.    Because said petition does not state facts sufficient to constitute a cause of action.

"2.    Because it appears from the face of said petition that the alleged damage to plaintiff was not the proximate result of any act of the defendant as set forth in said petition.

"3.    Because it appears from the face of said petition that the damages claimed to have been sustained by plaintiff are too remote from the alleged acts or omissions of the defendant to give a right of action to the plaintiff or permit him to recover from the defendant."

We are referred to certain decisions to support the petition. In Grimes v. Eddy, 126 Mo. 168, it is held: "A railway company which negligently permits Texas cattle to escape from its cars and to run at large thereby causing native cattle to contract Texas fever, is liable to a common law action for the resulting loss." In Kincaid v. Railroad, 62 Mo. App. 365, the facts were: "In loading cattle on an icy chute, one steer slipped and fell, knocking down a second, which fell upon the plaintiff and injured him." It was held that, the icy chute was the proximate cause of the plaintiff's injury. "That a connected series of causes caused the injury will not prevent the primary from being the proximate cause." And the rule is stated: "It is sufficient, in such cases, that the injury is the natural, though not the necessary or inevitable result of the negligent fault." [Miller v. Railroad, 90 Mo. 389.] "Where a passenger in alighting from a street car, by the sudden and negligent starting of the car before she had time to alight, was thrown under the feet of a mule hitched to a wagon, when the animal became unmanageable and drew the wagon wheels over her, the negligence of the street railway company was the proximate cause of the injuries caused thereby and was liable to her in action for damages for

the same." [Parker v. St. Louis Transit Co., 108 Mo. App. 465.]

The cases referred to fairly illustrate instances in which the negligence is to be attributed as the proximate cause of injury. In some of these cases the injury was the direct result of the negligent act, in others though not the direct, necessary and inevitable but the natural result of the negligent act.

It is said: "The original wrongful or negligent act will not be regarded as the proximate cause when any new agency, not within the reasonable contemplation of the original wrongdoer, has intervened to bring about the injury. Where, however, the intervening cause and its probable or reasonable consequences are such as could reasonably have been anticipated by the original wrongdoer, the casual connection between the original wrongful act and the subsequent one is not broken, and an action may lie therefor." [Railroad v. Paney (Texas), 99 S. W. 589; Brown v. Railroad, 20 Mo. App. 222.] "It is not negligence not to take precautionary measures to prevent an injury, which if taken would have prevented it, when the injury could not reasonably have been anticipated, and would not, except under exceptional circumstances, have happened." [Fuchs v. St. Louis, 167 Mo. 620.] "Every person who does a wrong is at least responsible for all the mischievous consequences that may reasonably be expected to result under ordinary circumstances from such misconduct." [Atkinson v. Railroad, 90 Mo. App. 489.] "The proximate cause, is the one which in the natural and continuous sequence unbroken by an intervening cause produces the injury and without which the result would not have happened; and it is not enough that the injury is the natural consequence of the negligence, it must be also the probable consequence which might have been foreseen by a man of ordinary prudence." [Saxton v. Railroad, 98 Mo. App. 494.]

This case stated in short is: that the defendant by its negligence permitted Texas cattle infected with Texas fever to escape from the bounds of its right of way upon the adjoining highways, one of which lead to a pasture which plaintiff had leased, from which he derived profit by the pasturing of cattle belonging to the people of the city of Clinton; that the State Veterinarian being informed of the fact that the said cattle had been upon the highways placed a quarantine over them; and that in consequence of the act of the said veterinarian, and the fact that the diseased cattle had been upon said highways including the one which led from the city to said pasture plaintiff's patrons would not permit their animals to be driven over said highway leading to his pasture there being no other way by which the same could be reached, except over private property; he lost the benefits and profits he would otherwise have received had it not been for said negligent acts of defendant.

Tested by the rule applicable to all cases the plaintiff's petition failed to state a cause of action. Plaintiff's injury was not the *natural and probable consequence of the negligent acts which might have been foreseen by a man of ordinary prudence.* It will not do to say that defendant might reasonably have anticipated that the said veterinarian would place the highway under quarantine for there was no law for his authority to do so; and had there been, and had it been such an act as the defendant might have reasonably anticipated, still the plaintiff was far short of making out a case. It cannot be said that in any event, it was probable for any reasonable person to anticipate that the act of negligence would have the effect of injuring plaintiff in respect to the profits of his pasture. And it cannot be said that plaintiff's loss was the natural result of the negligent act. Although mere remoteness of result will not in all instances defeat the action, yet the remoteness may be so great that it would be absurd to

attribute the result to the original act of negligence. And it seems to us that the acts alluded do not present an unbroken chain of causal connection. But the most convincing feature of the case, is that, it was not reasonable to anticipate that plaintiff would lose the profits from his pasture. Affirmed. All concur.