Carol MULLIKEN, a minor, by William Mulliken, next friend, and William Mulliken, Plaintiffs, Respondents,

v.

Judd PRESLEY, Defendant, Appellant.

No. 33086.

St. Louis Court of Appeals.
Missouri.

May 20, 1969.

Motion for Rehearing or to Transfer to the Supreme Court Denied June 13, 1969.

**154**

Richard M. Stout, John V. LaBarge, Jr., Kirkwood, for defendant-appellant.

Coleman, Ross & Cekovsky, Clayton, for plaintiffs-respondents.

DOUGLAS W. GREENE, Special Judge.

Defendant appeals from a judgment of the St. Louis County Circuit Court awarding plaintiff $2500.00 damages for personal injury. This is a dog bite case.

Defendant's teen-age daughter had been given a Cairn Terrier puppy. The pup was kept at defendant's home and was under his control. One afternoon the pup left the back yard where it was kept and went to the front yard of a neighbor, William Mulliken. Carol Mulliken, William's daughter, played with the puppy and petted it for a period of about five minutes. The pup then went to the next door neighbor's yard where it attempted to strike up an acquaintance with an elderly beagle; the beagle, due to advancing years and a crabby disposition, was not much inclined towards fun and games. The pup was tugging at the beagle's ears and trying to get it to play "a la ex-presidente." The beagle snapped at the pup and snarled. When this happened a second time, Carol walked over and picked up the pup to keep it from being hurt by the beagle. The pup, in a show of appreciation, fear, or anger, promptly bit her on the finger. It was not much of a bite, but it broke the skin and the finger bled slightly.

Carol put the puppy in her family's garage, bandaged her finger, and called her mother. After a family conference, the dog was taken by local police to Rabies Control Headquarters, the city name for dog pound, after a side trip to the Ladue Police Station for a purpose not ascertainable from the record. Patrolman Stogsdill of the Ladue Police Department called the defendant, told him the pup was at Rabies Control, and that the dog was to be confined at the Presley home at 25 Log Cabin Drive for a period of ten days. The officer told the defendant to confine it on a chain in a fenced in yard, in the home itself, or in a kennel.

The defendant picked up the pup from Rabies Control and took it home.

Defendant knew the pup had not been inoculated for rabies. Defendant knew that rabies was a dread disease, that there was an incubation period of ten days of the rabies virus, and that it was customary to confine and observe a dog for ten days after it had bitten a person so that if the dog showed signs of the disease, the person bitten could take preventative shots. He also had been so advised by the police officer.

Notwithstanding this knowledge and the advice of the police officer, the defendant not only did not confine the dog—he gave it to the family maid, without informing her that it should be confined or that there was a possibility that it might have rabies.

The dog disappeared, or was stolen, within the ten day period from the maid's home, where she had put the dog in her back yard. Plaintiff was told by her family doctor that rabies is 100% fatal and that there

was no known cure. Since the dog could not be located and observed, she therefore took the preventative series of fourteen shots at his advice. The shots, given daily, were extremely painful and caused swelling, tenderness, and pain. Welts appeared on her body in the area of the shots; she ran a fever and her movements were very restricted during the period when she was taking the shots. The cost of the medical treatment was $56.00.

Plaintiff sued on the theory that defendant was negligent for not confining his dog for ten days when he knew, or should have known that such confinement was necessary so that the dog could be observed; and that by reason of such failure to confine, the dog was lost, or stolen, causing plaintiff to have to take the rabies injections which were painful and injurious to her.

Defendant's answer alleged contributory negligence on plaintiff's part alleging her carelessness and negligence in failing to confine what ever dog may have bit her.

A jury awarded plaintiff a verdict of $2500.00, and after an adverse ruling on defendant's motion for new trial he appeals.

Defendant's allegations of error are almost as numerous as the shots that plaintiff had to take, and we will discuss them in order.

■ In his first two charges of error, defendant alleges that the dog's disappearance and plaintiff's resulting inoculations were brought about by an unforeseen, intervening cause (the dog's being stolen).; that there was no evidence of defendant's negligence, and therefore the trial court erred in not directing a verdict in his favor. We disagree. Defendant's negligence, clearly evident from the record, in not suitably confining the dog when he knew that it should be confined, occurred at the time he gave the dog away to the maid without informing her of the situation so that she could take proper precautions to confine it. Whether the dog was lost or stolen thereafter was immaterial; it could

not be found. The fact that it was gone and could not be observed was the basis for the doctor's advice that the treatments be given. There was no way to tell if the dog was rabid or not and defendant's conduct caused that situation. He could and should have placed the dog on a chain or leash in a fenced area, kept it in his house, or put it in a kennel for observation. Any of these methods would have been safe and secure, but defendant did not do any of them.

The rule of law imposing liability for the failure to properly confine animals, which their owners know, or should know, may cause injury or damage to other persons, is as old as the Law of Moses. Exodus Ch. 21: 28, 29, 30. Whether or not the pup in question had rabies is not the test. Defendant should have, from the grave nature of the disease suggested to him, used every precaution to keep the dog closely confined until he knew if it was rabid. Brune v. De Benedetty, Mo.App., 261 S.W. 930, l.c. 933. He did not do so.

■ There was ample evidence for the jury to find defendant was negligent, which they did. A verdict should be directed against a plaintiff only when the facts in evidence and the legitimate inferences to be drawn from them are so strongly against the plaintiff as to leave no grounds for reasonable minds to differ. Sigmund v. Lowes, Mo.App., 236 S.W.2d 14. That is not the case here.

■ Defendant's next allegation of error is that he was prejudicially limited in his voir dire examination when the court sustained objections to questions regarding ownership of the dog that did the biting. Ownership of the dog was not an issue in the case. All of the evidence, including defendant's own testimony on deposition, showed that he maintained the dog in his home and that the dog was under his control. He even stated that he owned it. Counsel was not denied the right to ask the jury panel if any of them would disregard any instructions of the court in

**156**

this area. In fact, he asked that very question with no objection. The court submitted the ownership question to the jury in Instruction No. 3, which was offered by defendant. We find no error here.

Counsel's voir dire questions were evidently framed to state that the evidence would be that defendant's daughter Judy owned the dog and therefore that defendant would not be responsible if the dog bit someone. Under the facts in this case that is not the law. Dogs are usually family property. They are brought home by children in many cases, but they are under the control of the head of the household. In this case the defendant father had the responsibility for the dog and the liability for the injury and damage it might cause others through his negligent acts, such as failure to warn of vicious propensities or, as here, failure to properly confine. It would be ridiculous, in cases of negligent injury from a dog bite, to permit a father to hide behind the skirts of his daughter, who might be only a toddler, by saying that the dog was hers. Dansker v. Gelb, Mo., 352 S.W.2d 12, l.c. 16.

Defendant's fourth allegation of error is that plaintiff's verdict directing Instruction No. 3 did not negate the defense of contributory negligence offered by defendant and given by the court in Instruction No. 5.

Instruction No. 3 was as follows:

"Your verdict must be for plaintiff Carol Mulliken if you believe:

First, before, on, and after August 9, 1965, defendant was in control of the dog upon his premises, and

Second, the dog bit plaintiff Carol Mulliken on August 9, 1965, and

Third, defendant was informed on said date that the dog had bitten plaintiff Carol Mulliken and that the dog should be confined for ten days and observed during such time for any indication of the presence of rabies, and

Fourth, defendant failed to exercise ordinary care to so confine and observe the dog for the ten day period, and

Fifth, defendant was thereby negligent, and

Sixth, as a direct result of such negligence plaintiff Carol Mulliken sustained damage."

Instruction No. 5 was as follows:

"Your verdict must be for the defendant, whether or not defendant was negligent, if you believe:

First, plaintiff Carol Mulliken picked up the puppy from behind, and at a time and under circumstances that she knew, or in the exercise of ordinary care should have known it would be likely that the puppy might snap at her, and

Second, plaintiff's conduct as submitted in paragraph First was negligent; and

Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained."

Defendant's answer pleaded contributory negligence on the part of plaintiff as follows: "4. Further answering defendant states that if plaintiff sustained any injury or damage as alleged in Count I that the same resulted directly and proximately from plaintiff's own carelessness and negligence in failing and neglecting to take reasonable precautions for the confining of whatever dog may have bit her."

Defendant offered no evidence at the trial. There was nothing in plaintiff's evidence to justify the submission of the pleaded issue of contributory negligence to the jury. Plaintiff was questioned on cross-examination as to what she observed before she picked up the pup, evidently to lay the groundwork for the justification of the submission of Instruction No. 5, which the court gave at defendant's request.

■ Contributory negligence is an affirmative defense and must be pleaded before it may become an issue in any case, unless plaintiff's own evidence establishes as a matter of law that she was contributorily negligent. That is not the case here.

Even if we were to assume that plaintiff's evidence constituted substantial evidence of her own contributory negligence in picking the pup up from behind at a time when the beagle was quarreling with the pup, defendant was not entitled to a submission of that issue to the jury since he had not affirmatively pleaded it. Shepard v. Harris, Mo., 329 S.W.2d 1.

■ The court erred in giving Instruction No. 5, but since the verdict was for the plaintiff, the error was harmless. Jameson v. Fox, Mo.App., 269 S.W.2d 140.

■ As there was no evidence or no proper instruction to submit defendant's pleaded affirmative defense of contributory negligence, he abandoned it, and plaintiff's verdict directing instruction which ignored such abandoned issue was not erroneous. Shepard v. Harris, supra; Paisley v. Liebowits, Mo., 347 S.W.2d 178.

The next four allegations of error all deal with plaintiff's closing argument. As defendant alleges cumulative error, we review all allegations and consider them together. The disputed portions of the argument are as follows:

"MR. COLEMAN: * * * Wouldn't you use some care to make sure that dog didn't get away? I don't care if it was a puppy; I don't think anyone does. The fact that maybe that puppy didn't have rabies was one in a million, what would you do if it bit you and you said 'my chances are one in a million, I might die'—

MR. STOUT: I object to that, your Honor, calling for the jurors to place themselves in the situation and I ask that a mistrial be declared and the jury discharged.

THE COURT: The objection will be sustained. The jury will disregard that portion of the argument about putting themselves in the position of the plaintiff. The motion for mistrial will be overruled. Proceed.

MR. COLEMAN: * * * Here is a girl who has been bitten by a dog; now, no matter what goes on, no matter where the dog is or if the dog comes through there is that one chance in a million she will die. Now, that's a positive unrefuted statement by the doctor—

MR. STOUT: I object to that, your Honor. There is no charge made as that in the petition and it is not proper argument of damages in the case—

THE COURT: Proceed.

MR. COLEMAN: Your Honor, all I am doing is arguing my case or trying to.

MR. STOUT: I have a right to object.

THE COURT: The jury will be guided by the evidence and instructions of the Court.

MR. STOUT: May I have a ruling on my objection?

THE COURT: The last objection is overruled. Proceed."

Later the following occurred:

"MR. COLEMAN: (continuing) One other thing I want to talk about is along the line of this business of ownership. I want to refer you again to this deposition and the parts I read and that has to do with the fact that a question was propounded to Mr. Presley, and said: 'I want to know if the dog turned over to Rabies Control and you went there to identify it, was it your dog? Answer: Well, the dog I picked up at Rabies Control and paid for was the dog that I owned.' That is a direct statement of ownership. Furthermore the dog was in his home, he owned it, he controlled it, he was even with the dog on the patio when it disappeared earlier—

MR. STOUT: I object to that. There was no evidence that he was there on the patio when the dog disappeared. That is highly improper and beyond the record and I renew my motion for mistrial and discharge of the jury.

MR. COLEMAN: This is final argument, your Honor.

THE COURT: The jury will be reminded that they have heard the evidence and that argument of counsel is not evidence but final argument. Proceed. Motion overruled."

Defendant urges the court erred in refusing to declare a mistrial in closing argument when plaintiff's counsel a) called upon the jury to put themselves in place of the plaintiff and referred to the fact that plaintiff might have died of rabies if she was not treated, b) argued that defendant was present on the patio when the pup got out of defendant's yard when such was not the case and not in evidence, and c) gave his own opinion as to what counsel thought was a fair measure of damages and that the cumulative effect of the argument and the court's rulings deprived defendant of a fair trial.

In the first part of the argument, plaintiff's counsel was talking about the standard of ordinary care and asked the jurors what they would have done under the circumstances. The court sustained the objection and ordered the jury to disregard the statement. It refused a motion for mistrial.

Counsel then said there was a one in a million chance the girl would die if not treated and stated that the doctor had so testified. He had. The court properly overruled the objection. Following that, plaintiff's counsel, in a long discourse on ownership, said among other things, "* * * the dog was in his home, he owned it, he controlled it, he was even with the dog on the patio when it disappeared earlier. * * *" Defendant objected to the last clause on the grounds that there was no evidence that defendant was on the patio when the dog

disappeared and moved for a mistrial. The court reminded the jury that the argument was not evidence and overruled the motion.

There was no evidence that defendant was on the patio when the pup disappeared, but we fail to see where that fact and argument were prejudicial. Such fact would not be proof of ownership or non ownership, or of liability or non liability. It was not material and, if error, was harmless.

Finally, counsel argued that he filed suit for $2500.00 and thought the case was worth $2500.00. The court sustained the objection as to what counsel thought and ordered the jury to disregard it.

Plaintiff's counsel then reviewed the evidence of plaintiff's pain and suffering and said the case was worth $2500.00—again defendant objected and moved for a mistrial, which motion and objection were overruled.

Here counsel, in effect, was saying that based on this evidence of pain and suffering the case is worth $2500.00. It would have been better form to say, "you are entitled to infer from this evidence, or to find from this evidence, that plaintiff is damaged in the sum of $2500.00," but lawyers, unfortunately, like trial judges do not always phrase their remarks so as to satisfy even the most discerning and critical reviewers on the appellate level.

What we, as an Appellate Court, should decide is whether remarks on closing argument are so calculated, so inflammatory, and so prejudicial that we can say with clear conscience that they violate the standards of fair play and deprive one of the parties of a fair trial. In considering this question, deference should be given to the rulings of the trial court, who is in a much better position than we to judge the effect of counsel's remarks to the jury. In this case we feel that the trial court correctly held that plaintiff's closing argument was not so plainly inflammatory as to have affected the result of the trial.

Defendant's final allegation of error is that the verdict is excessive.

Plaintiff's evidence was to the effect that she spent fourteen days of continual suffering during most of which time she was confined to bed. The evidence was that large, feverish lumps would appear where she received each injection and that each lump would stay for five days. She received one shot a day for fourteen days in her abdomen and arms. The traumatic effect of fourteen consecutive injections of vaccine, which produced redness, swelling, tenderness and pain, was considered by the jury to be worth $2500.00, and likewise was so considered by the trial court, who after having observed the witnesses and hearing the testimony did not see fit to disturb the verdict. Neither do we.

The judgment is affirmed.

WOLFE, P. J., and BRADY, J., concur.