L. R. STEVENSON,
Plaintiff–Respondent,

v.

FIRST NATIONAL BANK OF CALLA-
WAY COUNTY, a Missouri Banking
Corporation, Defendant–Appellant.

No. KCD 30537.

Missouri Court of Appeals,
Western District.

Sept. 2, 1980.

Joe D. Holt, Holt, Krumm, Hamilton, Mays & Shryock, Fulton, for defendant–appellant.

Dale C. Doerhoff, Cook, Vetter & Doerhoff, Jefferson City, for plaintiff–respondent.

Before CLARK, P. J., ànd DIXON and SOMERVILLE, JJ.

DIXON, Judge.

Defendant, First National Bank of Callaway County, appeals from a money judgment based upon a jury verdict for plaintiff, L. R. Stevenson, in the amount of $10,000. The amount of the judgment reflects the face value of a check (plus interest) drawn on the account of one Marion Capron, issued to plaintiff Stevenson, which defendant bank failed to dishonor and return by its deadline as required by § 400.4–302 RSMo 1978.

Defendant raises several points of error with respect to the instructions in the case.

On July 9, 1974, plaintiff L. R. Stevenson received from LeDon Capron a check for $8,053.00. It was issued to Stevenson by Marilyn R. Capron and drawn on her account at the First National Bank of Callaway County. Stevenson, pursuant to his agreement with Capron, held the check for thirty days. He deposited it in his account at the Commerce Bank in Columbia on August 8, 1974. The check was for the repayment of an $8,000 loan (plus interest) which Stevenson had previously made to Capron.

Defendant Bank first received the check in question on August 12, 1974, after it had gone through regular banking channels. Defendant Bank sent the check to a computer center for processing, and it was returned to defendant Bank on August 13. It was not until the following day, August 14, 1974, that it was discovered the check was drawn on uncollected funds, and the process was reversed. Plaintiff received notice of dishonor on August 16. There had been no prior notice to the plaintiff, and all relevant days were banking days. The course of dealing with respect to the collecting of the check was established by the documentary evidence and the admissions of the officers and agents of the defendant Bank.

Plaintiff Stevenson filed his petition, claiming $8,053 plus interest from defendant Bank based upon the Bank's failure to act upon the check from Marion Capron

before expiration of the midnight deadline pursuant to § 400.4–302 RSMo 1978. This statutory section represents Missouri's adoption of the Uniform Commercial Code § 4–302 and reads as follows:

"400.4–302. Payor bank's responsibility for late return of item.–In the absence of a valid defense such as breach of a presentment warranty (subsection (1) of the section 400.4–207), settlement effected or the like if an item is presented on and received by a payor bank the bank is accountable for the amount of

(a) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or

(b) any other properly payable item unless within the time allowed for acceptance or payment of that item the bank either accepts or pays the item or returns it and accompanying documents."

Defendant filed a general denial without affirmative defenses. The morning of trial, over two years after the suit was filed, defendant moved for leave to file an amended answer seeking to assert affirmative defenses of no consideration and payment. This motion was denied as being untimely, and defendant does not contest the ruling.

Defendant attempted to inject the defense of no consideration in its opening statement, but the court sustained an objection that the issue was beyond the scope of the pleadings. However, in the cross–examination of plaintiff Stevenson, defense counsel, over objection, examined Stevenson about other transactions with Capron.

Plaintiff Stevenson's testimony indicates that, from sometime prior to June 9 up until about mid–August, a loan arrangement existed between Capron and plaintiff Stevenson. Capron borrowed money from plaintiff from time to time, usually for short periods. The loans were handled by a trading of checks and the instant situation was no exception: plaintiff gave Capron a check for $8,000 on July 9, 1974. Capron, in return, gave plaintiff the check in issue in the amount of $8,053 with specific instructions to hold it for a month until Capron could liquidate some assets. The entire course of dealing between Capron and plaintiff Stevenson is shrouded in uncertainty and doubt. It is impossible from plaintiff Stevenson's testimony and the exhibits furnished to conclude anything in the nature of an accounting between Capron and plaintiff that would establish the fact of payment or nonpayment of the check in issue. The testimony of Stevenson was related to the exhibits by the cross–examination but that is of little assistance since Stevenson's testimony was confusing and uncertain as to the course of dealing between Capron and himself. For instance, at one point Stevenson asserted that when the $8,053 check in question was dishonored, Capron closed out the account upon which it was written and wrote plaintiff Stevenson three checks on other accounts amounting to $8,053. When questioned as to when these three checks were deposited and whether or not they were honored, several conflicting answers were given. At one point plaintiff states that he thinks an August 19th deposit of $8,053 was from the three checks and that payment was stopped on those three checks. Later, plaintiff states that the three checks were part of a $14,000 deposit made on August 16, 1974. Still later, plaintiff again testified that the three checks were the $8,053 deposit made on August 19, 1974 but that payment was stopped.

Plaintiff also testified the $14,000 deposit made on August 16 was of other checks from Capron.

Plaintiff Stevenson also said Capron owed him around $13,000 in November or December of 1974. Plaintiff said he paid Capron some money and gave a credit on what was owed to plaintiff in exchange for some furniture. Capron went into bankruptcy less than three months later, and

plaintiff was forced to give up the money from the furniture. Plaintiff asserted that his ultimate loss was $9,000 and that the bankruptcy record would show that the check in issue was never paid.

All of the claims of error of the defendant Bank involve the instructions to the jury. Not in the order briefed and summarized, they may be stated as follows. First, that there was evidence of payment which the jury was directed to disregard by plaintiff's instructions; second, a claim that the instructions posed a conflict; and, third, that the instructions ignored a theory of partnership presented by the evidence.

At the heart of the first two contentions is the defendant's claim that the defense of payment is available to a bank which would otherwise be liable to the payee of a check under the provisions of § 400.4–302 RSMo 1978. As will be demonstrated, that issue need not be reached or decided in the factual and procedural context of the instant case.

Even if it be assumed that the defense of payment was available to the defendant Bank and even if the further assumption is indulged that the issue was pleaded, which it was not, the question would still remain as to the sufficiency of the evidence to submit the issue as an affirmative defense. That "payment" is an affirmative defense is undoubted, Rule 55.08; further, the burden of such an affirmative defense rests upon the party asserting it and, absent evidence sufficient to permit the jury to find the factual basis for the defense, it is error to submit an instruction on an affirmative defense.

■ The question thus presented by the argument of the defendant Bank is the sufficiency of the evidence to support a finding of fact that the check in issue had been paid. In the peculiar factual context of this case, it was not sufficient. The difficulty with the proof is a lack of any coherent evidence showing the entire course of dealing between Capron and the plaintiff Stevenson. There is no evidence as to when the exchange of checks began and what the status of the account was between the two

at any given point. The cross–examination testimony of plaintiff Stevenson taken in the light most favorable to the defendant Bank does not show the check in issue was ever paid. In the argument, counsel for the defendant Bank, after reviewing the meagre and confusion evidence, stated he did not know when Stevenson was paid and that no one but Stevenson knew. The vague and uncertain character of the oral evidence is not aided but is weakened by the documentary evidence offered. The bank records for a part of July and August, relating to the transactions in plaintiff Stevenson's account, were marked as exhibits. After the cross–examination, they were offered in evidence. In an off–the–record discussion, some portion of the records were denied admission. After the conference, the offer was renewed as to parts of the exhibits, and portions were admitted. It cannot be determined from the exhibits submitted here and the transcript which portions of the exhibits were properly in evidence, nor any meaningful relation between the exhibits and the testimony. The proof does not support a submission of the issue of payment.

■ Defendant Bank's second assertion of error is the giving of Instructions 3 and 4 because, when offered in conjunction with Instruction No. 5, they are misleading and confusing. Instructions 3 and 4 submitted the plaintiff's theory of the case under § 400.4–302 RSMo 1978 and did not negate either damages or payment. The claim raised by the defendant Bank is that Instruction 5 fatally conflicts with instructions 3 and 4 because of this failure. Instruction No. 5, which defendant has failed to set forth in its brief, reads as follows:

### INSTRUCTION NO. 5

Your verdict must be for defendant if you do not believe plaintiff sustained damage,

or if you do not believe defendant held the check past its midnight deadline.

Because of the failure to set forth the instruction, the point relied on has preserved

nothing for review. *Bremer v. Mohr*, 478 S.W.2d 14, 19 (Mo.App.1972); Rule 84.04(e). As a matter of grace, the point will be reviewed. To do so, it must again be assumed without so deciding that the affirmative defense of payment was available to the defendant, that there was sufficient evidence to support such a defense, and that it had been pleaded. Even so assuming, the form of the instruction is so erroneous that plaintiff's failure to negate it will not be considered error. *Mulliken v. Presley*, 442 S.W.2d 153, 157 (Mo.App.1969); *Clark v. Campbell*, 492 S.W.2d 7, 10 (Mo.App.1973).

Payment is an affirmative defense under Rule 55.08. Defendant appears to have used a standard MAI converse instruction form (33.02(3)) for submitting both a converse and a affirmative defense instruction. While it is true that a defendant may submit an affirmative defense, or a converse or both, *Fehlbaum v. Newhouse Broadcasting Corp.*, 483 S.W.2d 664, 665 (Mo.App.1972); *Jefferson v. Biggar*, 416 S.W.2d 933, 939 (Mo.1967), MAI does not provide for such instructions to appear in a combined form.

In *Van Dyke v. Major Tractor & Equipment Co., Inc.*, 557 S.W.2d 11, 15 (Mo. App.1977), it is said that such instructions may be "joined." The instructions in that case were separate instructions. The language may not be read as authorizing such a hybrid instruction as was offered in the instant case. Without a proper instruction to submit defendant's affirmative defense, the fact that plaintiff's verdict directing instruction ignored the affirmative defense is not error. *Mulliken, supra.*

Defendant has the additional problem, as will be shown below, of having failed to plead its affirmative defense. As a result, unless plaintiff's own evidence established the issue as a matter of law, which it did not, it was not even in the case, and defendant was not entitled to have it submitted to the jury. *Mulliken; Huter v. Birk*, 439 S.W.2d 741, 745 (Mo.1969). Even if the court erred in giving Instruction No. 5 as an affirmative defense instruction, since the verdict was for the plaintiff, the error was harmless. *Mulliken, supra.* It would be anomalous, in any event, to allow defendant to tender such an erroneous instruction thereby creating error and then allow defendant to benefit from such an error on appeal by claiming that its own erroneous instruction conflicted with proper instructions tendered by the plaintiff. While defendant in the instant case couches its claim in terms of error in the giving of the three instructions because they are in conflict, it was defendant's erroneous instruction which "invited the error." The thrust of defendant's claim thus must rest upon an erroneous instruction which defendant itself offered. A party may not complain of error in an instruction which it requested. *State ex rel. State Highway Comm'n. v. Nickerson and Nickerson, Inc.*, 494 S.W.2d 344, 349 (Mo.1973). Since there was no duty on the part of plaintiff to correct defendant's erroneous instruction, *Van Brunt v. Meyer*, 422 S.W.2d 364, 369 (Mo.App.1967), defendant's claim of error by reason of claimed conflict must fail.

Finally, defendant urges that the trial court erred in offering Instructions 3 and 4 because the evidence showed that plaintiff was a business partner of Capron, that the check in question was venture capital and that plaintiff cannot recover his loss where he entered the venture knowing the high probability of that loss. Instructions 3 and 4, defendant argues, precluded consideration of testimony of the plaintiff that the check in issue was not an isolated transaction and plaintiff's statement that he "was more or less his (Capron's) silent partner and fall guy so to speak when he'd get in serious trouble financially . . . ."

Plaintiff Stevenson argues in response that this point should not be noticed by this court as the issue of partnership investment was not raised in the pleadings, never mentioned at trial, and did not appear in defendant's motion for new trial. *Cato v. Modglin*, 545 S.W.2d 307, 309 (Mo.App. 1976); *Safe-Buy Real Estate Agency, Inc. v. Hemphill*, 498 S.W.2d 599, 600–01 (Mo. App.1973), and Rule 78.07 supports such an argument. Defendant has couched its

claim of error in the context of the propriety of Instructions 3 and 4, a challenge that defendant has made in its new trial motion and through objections below.

Again considering the matter as properly raised, the issue of whether there was a joint venture is in the nature of an avoidance of liability. *Sitzes v. Raidt*, 335 S.W.2d 690, 702–03 (Mo.App.1960). As such, it falls under Rule 55.08 as an affirmative defense which should have been pleaded and proved. The pleadings in this case show only a general denial by the defendant. Absent the pleading of such a defense, no instruction could properly be submitted to the jury; and, in any event, no such affirmative defense instruction was submitted by defendant.

The judgment is affirmed.

All concur.